IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| R.W., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:13-cv-02115-LMM |
| BOARD OF REGENTS OF THE | ) | |
| UNIVERSITY SYSTEM OF | ) | |
| GEORGIA, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTIONS IN LIMINE AND MEMORANDUM IN SUPPORT

Defendant Board of Regents of the University System of Georgia (hereinafter "GSU" or "Defendant"), by and through counsel, Samuel S. Olens, Attorney General for the State of Georgia, submits the following two motions *in limine*, showing the Court as follows:

### I.     ARGUMENT AND CITATIONS TO AUTHORITY

A motion *in limine* is a motion under which a party seeks to exclude certain evidence from admission at the time of trial. *Jack v. Glaxo Wellcome, Inc.,* 239 F. Supp. 2d 1308, 1318 (N.D. Ga. 2002). Defendant moves this Court for two Orders *in Limine* prohibiting, excluding, limiting, and suppressing any and all

evidence, proffers, tender, comments, statements, testimony, colloquy, or any other utterance in the presence of the jury in the following instances:

**A.     Testimony From or Concerning Former GSU Employee Yared Alemu Should be Excluded**

In this lawsuit, Plaintiff alleges that Georgia State University's (herein, "GSU") implementation of its Mandated Risk Assessment Program (herein, "MRAP") violated his rights under the Rehabilitation Act (herein, "RA"), Americans with Disabilities Act (herein, "ADA").  The events giving rise to Plaintiff's claims took place between February and April 2013.  Plaintiff, however, may seek to introduce testimony from or concerning Yared Alemu, Ph.D., a disgruntled former employee of GSU's Counseling and Testing Center (herein, "CTC") who was terminated from his CTC position over a year earlier, in 2012.  At that time, Mr. Alemu alleged that GSU's implementation of the MRAP was possibly flawed on racial grounds and he repeatedly clashed with Dr. Jill Lee-Barber, the head of the CTC, over this issue.  Testimony and other evidence regarding Mr. Alemu, his statements or opinions regarding MRAP, or the circumstances of his employment or termination from the CTC should be excluded.

This evidence is inadmissible because: (1) any factual testimony from or concerning Mr. Alemu is not relevant to, or probative of, any disputed issue in this

case, and thus is not permitted under FED. R. EVID. 402; (2) any opinion testimony is precluded due to Plaintiff's failure to properly disclose Mr. Alemu as an expert under FED. R. CIV. P. 26(a)(2) and Local Rule 26.1; and (3) any factual testimony is independently excludable under FED. R. EVID. 403 because any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and undue consumption of time.

    **1.    Factual Testimony From Mr. Alemu is Irrelevant and Not Based Upon Personal Knowledge**

Under FED. R. EVID. 402, evidence that is not relevant is not admissible. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. FED. R. EVID. 602 states that a witness may only testify only to those matters within his personal knowledge. Mr. Alemu left the employ of GSU in early 2012, one year before any of the events giving rise to this lawsuit, and has no personal factual knowledge regarding what occurred at the CTC after his departure or the manner in which CTC administered the MRAP in 2013. He further would have no personal factual knowledge regarding the specific events that gave rise to this lawsuit during the period from February to April 2013, nor would the circumstances of his departure or the reasons therefore be relevant to

events occurring at that time.

The question to be answered under Counts One, Two, and Three of Plaintiff's Complaint is whether GSU intentionally discriminated against Plaintiff via the MRAP. In that regard, the relevant legal standard is whether GSU acted with deliberate indifference to Plaintiff's protected legal rights <u>in early 2013</u>, when the subject events occurred. *See* Defendant's Brief in Support of Summary Judgment, Doc. 39-16, Section II(B)(1) (analyzing standard for Plaintiff's recovery under Title II of the ADA and under 14th Amendment). Evidence regarding the MRAP's implementation in prior years with regard to other students, or Mr. Alemu's review or participation in that implementation, does not answer this question, nor does evidence concerning Mr. Alemu's employment by GSU.

Plaintiff may alternatively argue that Mr. Alemu's testimony or documents are admissible to prove a disparate impact of the MRAP in support of Counts Four and Five of Plaintiff's Complaint. This argument fails for two reasons. First, as set forth in Section II(B)(2) of Defendant's Brief in Support of Summary Judgment [Doc. 39-16], Plaintiff's claims in Counts Four and Five are based upon regulations that exceed the rights granted under the enabling statute, and thus are impermissible. Second, any testimony from Mr. Alemu regarding

disparate impact would constitute expert opinion testimony. *See J & V Development, Inc. v. Athens-Clarke County*, 387 F. Supp. 2d 1214, 1225 (M.D. Ga. 2005) (expert statistical analysis must support disparate impact claim). However, for the reasons set forth in Section I(A)(2), *infra*, Mr. Alemu is barred from offering opinion testimony pursuant to FED. R. CIV. P. 26 and 37. Thus, any such evidence or testimony is inadmissible and GSU's Motion *in Limine* should be granted such that any testimony from, or evidence concerning, Mr. Alemu is excluded.

  **2**.  **Opinion Testimony from Mr. Alemu is Inadmissible Under FED. R. CIV. P. 37(c)**

As referenced above, Plaintiff may seek testimony from Mr. Alemu regarding any disparate impact from GSU's implementation of the MRAP. Mr. Alemu compiled certain statistics relating to this issue when he was employed by GSU in 2011 and Plaintiff may seek to introduce documents or testimony concerning those statistics or Mr. Alemu's interpretation thereof. GSU expressly denies that Plaintiff has a valid legal basis for a disparate impact claim. However, even assuming such basis existed, any testimony from Mr. Alemu on the subject would be opinion testimony under FED. R. CIV. P. 26(a) and would be barred due to Plaintiff's failure to properly disclose Mr. Alemu as an expert witness.

The Federal Rules of Civil Procedure require that a party identify in

discovery any witness who will offer expert testimony. FED. R. EVID. 702; *Leathers v. Pfizer*, 233 F.R.D. 687, 696-697 (N.D. Ga. 2006) ("FRCP 26(a)(2)(A) applies generally to any witness who will deliver an expert opinion under FRE 702."). The full disclosure obligations, including the requirement of a written report, apply where a witness will offer an opinion that is not solely factual. *Leathers,* 233 F.R.D. at 696-97; *Dishman v. Wise*, 2009 U.S. Dist. LEXIS, 57888, *6 (M.D. Ga., July 7, 2009) (issues on causation fall within scope of Rule 702). The consequences of a failure to comply with the disclosure and supplementation requirements of FED. R. CIV. P. 26(a)(2) are set forth in FED. R. CIV. P. 37, which states in relevant part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

FED. R. CIV. P. 37(c)(1).

In this case, Plaintiff has neither disclosed Mr. Alemu as an expert witness, nor has he provided the written report required by Rule 26. As a result, Defendant has been deprived of the opportunity to explore any opinions Mr. Alemu might hold through discovery and has been further deprived of the opportunity to obtain a rebuttal expert, if necessary. For that reason, GSU's Motion *in limine* should be granted and any expert opinion testimony from Mr. Alemu should be precluded.

### 3. Any Probative Value of Evidence Related to Mr. Alemu is Substantially Outweighed by the Danger of Unfair Prejudice

Even assuming that evidence concerning Mr. Alemu bears some minimal relevance, the probative value of any such testimony is substantially outweighed by the danger of unfair prejudice under FED. R. EVID. 403. That Rule provides, "[A]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The Advisory Committee Note on Rule 403 provides that "unfair prejudice within this context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."

For example, evidence may be unfairly prejudicial because it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, triggers other mainsprings of human action, or may cause a jury to base its decision on something other than the established propositions of the case. *See United States v. Saintil,* 753 F.2d 984, 989 (11th Cir. 1985); *United States v. Osum,* 943 F.2d 1394, 1404 (5th Cir. 1991); *United States v. Kang,* 934 F.2d 621, 628 (5th Cir. 1991); *United States v. Bowers,* 660 F.2d 527 (5th Cir. 1981).

In this case, Mr. Alemu cannot offer opinion evidence under FED. R. CIV. P.

26(a) and 37.  As set forth in Section II(A)(1), *supra*, any factual testimony concerning Mr. Alemu would be irrelevant, considering that it would relate to a time period one year prior to the events that gave rise to this lawsuit.  However, even assuming that Plaintiff could make some *de minimus* showing of relevance, testimony regarding Mr. Alemu's time at the CTC would still invite jurors to make an improper and emotional decision based on allegations unrelated to the issues before it.  As described in the documentation attached hereto as collective Exhibit "A", Mr. Alemu's termination from the CTC and separation from GSU was fairly acrimonious and involved his accusing GSU of conflict of interest and other improprieties.  There may be personal animus on the part of Mr. Alemu toward Dr. Jill Lee-Barber, the current head of the CTC.  The jury could easily draw impermissible inferences from these circumstances, inferences that would far outweigh any minimal probative value of the evidence.  Any evidence concerning Mr. Alemu and his tenure at GSU should be excluded under FED. R. EVID. 403.

**B.     The GSU Police Report Should be Excluded as Both Cumulative and Prejudicial**

On February 14, 2013, GSU Police were summoned by the CTC staff to escort Plaintiff to Grady Hospital for a mental health evaluation.  In accordance with its standard procedure, the GSU Police generated an Incident Report after this event (herein, the "Incident Report").  A true and correct copy of the Incident

Report is attached hereto as Exhibit "B".  The Incident Report is a single page and contains the following information:  (1) The date, time, and place of the incident; (2) Description and contact information for the CTC staff involved and the Plaintiff; and (3) A brief narrative, explaining what the officers were asked to do by the CTC staff and what they subsequently did.  The Incident Report also contains, under the headings "Crime" and "Classification", the notation "Demented Person."  It contains no further factual information or data.

FED. R. EVID. 403 allows for the exclusion of otherwise relevant evidence where it would cause the "needless presentation of cumulative evidence." *See Alimenta (U.S.A.), Inc. v. Stauffer*, 598 F. Supp. 934, 941 (N.D. Ga. 1984).  The District Court has "broad discretion" under Rule 403 to exclude evidence, and the Eleventh Circuit will "not disturb the court's ruling unless the judge has clearly abused his discretion . . . ." *Stallworth v. Ill. Cent. Gulf R.R.*, 690 F.2d 858, 868-69 (11th Cir. 1982).  The small amount of information in the Incident Report is cumulative and unnecessary to establish the facts set forth therein, all of which will be introduced at least once through more reliable live-witness testimony.  The biographical data and narrative contain facts that are not disputed by GSU and which will easily be established at trial through the testimony of various GSU and CTC staff members, as well as Plaintiff.  The record shows no dispute between the

9

parties as to the facts set forth in the two paragraphs of the narrative, which simply sets forth what the GSU officers were requested to do and what they actually did.[1] As such, the evidence is Incident Report is cumulative and should be excluded.

In addition to the cumulative nature of the Incident Report, the probative value of this document is substantially outweighed by the danger of unfair prejudice under FED. R. EVID. 403. Plaintiff may seek admission based upon the use of the term "Demented Person" at two places in the Incident Report, arguing that the term "demented" somehow illustrates negative stereotyping of the mentally ill by GSU. "Demented" is defined simply as "[o]f unsound mind." *Black's Law Dictionary* 430 (6th Ed. 1990). In the law enforcement context, it is used as police radio shorthand for the mentally ill and not in any pejorative sense[2]. *See Samples ex. rel. Samples v. Atlanta*, 846 F.2d 1328, 1329 (11th Cir. 1988); *United States v. Currens*, 290 F.2d 751, n.18 (3rd Cir. 1961). There is therefore no evidence of record to indicate that the officers who prepared the Incident Report used that term in any negative fashion. Allowing the lay jury to view the Incident Report, however, would present an undue danger of prejudice that far exceeds the very minimal probative value – if any – presented by the Incident Report. Such

---

[1] With the sole exception of the term "Demented Person," which is addressed *infra*.
[2] *See* Code 10-47 at http://copradar.com/tencodes/; Code 10-96 at http://pages.suddenlink.net/lubbockedacs/10-codes.htm; and Code 10-22 at http://bradthemad.org/scanner/dekalb_signals.html.

evidence is excludable under FED. R. EVID. 403.

### III.  CONCLUSION

WHEREFORE, Defendant Board of Regents of the University System of Georgia respectfully requests that its Motions In Limine be granted, as is more specifically set forth herein.

Respectfully submitted this 26th day of May, 2015.

|  |  |
|---|---|
| SAMUEL S. OLENS<br>Attorney General | 551540 |
| KATHLEEN M. PACIOUS<br>Deputy Attorney General | 558555 |
| DEVON ORLAND<br>Senior Assistant Attorney General | 554301 |
| */s/ Laura L. Lones*<br>LAURA L. LONES<br>Assistant Attorney General | 456778 |
| */s/ Ronald J. Stay*<br>RONALD J. STAY<br>Assistant Attorney General | 621732 |

PLEASE SERVE:
Laura L. Lones, and
Ronald J. Stay
Department of Law
40 Capitol Square, S.W.
Atlanta, GA  30334
Tel: (404) 463-8850
Fax: (404) 651-5304
llones@law.ga.gov
rstay@law.ga.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in 14-point New Times Roman type face.

*/s/ Laura L. Lones*
LAURA L. LONES                              456778
Assistant Attorney General

## CERTIFICATE OF SERVICE

I do hereby certify that I hereby certify that on May 26, 2015, I electronically filed the foregoing **DEFENDANT'S MOTION IN LIMINE AND MEMORANDUM IN SUPPORT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

James Radford
Caleb Gross
James Radford, LLC
545 N. McDonough Street
Suite 212
Decatur, Georgia 30030

Jeffrey R. Filipovits
Filipovits Law Firm, PC
2900 Chamblee-Tucker Road
Building 1
Atlanta, Georgia 30341

/s/ Laura L. Lones
LAURA L. LONES            456778
Assistant Attorney General