IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| R.W., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:13-cv-02115-LMM |
| BOARD OF REGENTS OF THE | ) | |
| UNIVERSITY SYSTEM OF | ) | |
| GEORGIA, | ) | |
| | ) | |
|     Defendant. | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION IN LIMINE**

Defendant Board of Regents of the University System of Georgia (hereinafter "GSU" or "Defendant"), by and through counsel, Samuel S. Olens, Attorney General for the State of Georgia, submits this Response in Opposition to Plaintiff's Motion *in Limine* [Doc. No. 75], showing the Court as follows:

**Introduction**

This lawsuit arose due to GSU's decision to place conditions upon Plaintiff's continued residence in on-campus housing. In his Motion *in Limine*, Plaintiff effectively seeks to preclude GSU from explaining the basis for this decision. If granted, Plaintiff's Motion would seriously prejudice GSU's ability to mount an

effective defense to Plaintiff's claims. Plaintiff advanced a similar argument in his Motion to Strike Dr. Jill Lee-Barber's Declaration [Doc. No. 55], which Motion was denied by this Court [Doc. No. 67]. For the reasons set forth herein, Plaintiff's current Motion should be denied as well.

## Argument and Citation to Authority

Plaintiff asserts claims under the Americans with Disabilities Act (herein, "ADA") and the Rehabilitation Act (herein, "RA"). To recover compensatory damages for these claims, Plaintiff must prove discriminatory intent by showing deliberate indifference, which requires proof GSU knew that harm to the protected legal right was substantially likely to occur and then failed to act on that likelihood. *McCullum v. Orlando Regional Healthcare System*, 768 F.3d 1135, 1147 (11th Cir. 2014); *Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, 344, 345 (11th Cir. 2012). This is an exacting standard, requiring much more than negligence or a difference in professional opinion. *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Torres v. Gardner*, 2006 U.S. Dist. LEXIS 78592, 3 (M.D. Ga. 2006). Decisions made in a good-faith attempt to pursue legitimate ends cannot constitute deliberate indifference. *Wood v. President & Trustees of Spring Hill College*, 978 F.2d 1214, 1219 (11th Cir. 1992). Rather, there must be proof of a deliberate choice that will

inevitably result in the denial of rights.  *Liese*, 791 F.3d at 344; *McCullum*, 768 F.3d at 1147.  Thus, officials who are not medical professionals may rely in good faith upon the advice of trained professionals concerning medical matters.  *See Nair v. Sikes*, 1996 U.S. Dist. LEXIS 20907, 8 (N.D. Ga. 1996); *Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008); *Royal v. Bassett*, 2008 U.S. Dist. LEXIS 99405, 21 (W.D. Va. 2008).

Rule 26 requires that persons providing expert testimony under Federal Rule of Evidence 703 be identified as such during discovery.  Fed.R.Civ.P. 26(a)(2).  A witness is not an expert witness merely by virtue of specialized training and knowledge in a particular field.  *See Fisher v. Ford Motor Co.*, 178 F.R.D. 195, 197 (N.D. Ga. 1998); *Sipes v. United States*, 111 F.R.D. 59, 61 (S.D. Cal. 1986).  Rule 26's disclosure requirement "does not encompass a percipient witness who happens to be an expert."  *Gomez v. Rodriguez*, 344 F.3d 103, 113 (1st Cir. 2003).  When the witness "was an actor with regard to the occurrences from which the tapestry of the lawsuit was woven, and the defendant[] sought to present his [or her] testimony on that basis," that witness is not testifying as an expert.  *Id.*

Plaintiff's claims concern GSU's Mandated Risk Assessment Process (herein, "MRAP").  Liability for Plaintiff's claims attaches only upon "the deliberate indifference of someone . . . who enjoys substantial supervisory

3

authority within an organization's chain of command so that, when dealing with the complainant, the official had complete discretion at a 'key decision point' in the administrative process." *Liese*, 701 F.3d at 350.  In this case, that person is Dr. Rebecca Stout, GSU's Dean of Students, who made the decision to invoke the MRAP and to ultimately place certain conditions upon Plaintiff's continued residence in on-campus housing. [Stout Depo., 47-48]  Dr. Stout, however, is not a medical professional and may rely in good faith upon advice and guidance from medical professionals such as Dr. Justin Donaldson and Dr. Jill Lee-Barber, psychologists at GSU's Counseling and Testing Center (herein, "CTC"). [Stout Depo., 24-25]  The evidence shows that Dr. Stout did, in fact, solicit and rely upon Dr. Donaldson and Dr. Lee-Barber's opinions with regard to her handling of the Plaintiff.  [Stout Depo., 48-52; Lee-Barber Depo., 8-9; Donaldson Depo., 5, 9]  Dr. Lee-Barber and Dr. Donaldson, in turn, testified that their opinions were informed by both Plaintiff's medical records and their general medical knowledge regarding the potential risks associated with Plaintiff's mental state and expressed behaviors.  [Lee-Barber Depo., 9-10, 51-52; Donaldson Depo., 5-6, 9-11]  Plaintiff seeks to preclude Dr. Lee-Barber and Dr. Donaldson from fully explaining why they advised Dr. Stout as they did.

The ADA and RA's protections do not apply where an "individual poses a

direct threat to the health or safety of others." 28 C.F.R. § 35.139(a). The ADA has generally defined "direct threat" to mean "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3) (Title I).

> In determining whether an individual poses a direct threat to the health or safety of others, a public entity must make an individualized assessment, based on reasonable judgment that relies on ***current medical knowledge or on the best available objective evidence***, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk.

28 C.F.R. § 35.139(b) (emphasis added); *see also School Bd. of Nassau County v. Arline*, 480 U.S. 273, 288 (1987) (RA decision setting forth similar test).

GSU is entitled to demonstrate that Dr. Stout relied in good faith upon the advice of medical experts in making her decisions and, in so doing, explain how those medical experts arrived at their advice. It is further entitled to demonstrate that based upon both current medical knowledge and objective evidence, Dr. Stout made an individualized assessment based upon reasonable judgment that Plaintiff posed a direct threat and thus was outside of the protections of the ADA and the RA. This goes to the heart of GSU's defenses in this case. If GSU cannot describe the "current medical knowledge" upon which it relies, then it cannot fully utilize

the defenses available to it under the ADA and the RA.

Plaintiff seeks to preclude GSU from even discussing why it viewed Plaintiff as a direct threat in any way other than objective evidence, i.e., whether Plaintiff overtly threatened anyone in the GSU community with harm.  However, the record indicates that Plaintiff did not make direct, explicit threats of harm to others.  Rather, the direct threat arose from GSU's interpretation of Plaintiff's medical history viewed against his recent behaviors, an interpretation that must necessarily be based upon medical judgment.  The law permits such an interpretation because a "direct threat" assessment may be based upon **either** objective evidence **or** current medical knowledge.  Plaintiff's goal, however, is to preclude GSU from discussing the "current medical knowledge" option and then argue that because Plaintiff never explicitly threatened another person GSU cannot invoke the "objective evidence" option.  GSU cannot invoke the "current medical knowledge" option without at least articulating what current medical knowledge it relied upon, regardless of whether that knowledge is ultimately correct.  GSU can only do this through the testimony of the persons who participated in "the occurrences from which the tapestry of the lawsuit was woven . . . ."  *Gomez*, 344 F.3d at 113.  Those persons are the witnesses Plaintiff seeks to exclude.

Federal Rule of Evidence 702, and thus the expert disclosure requirements

6

of Federal Rule of Civil Procedure 26(a)(2), apply only where the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702 (2015).  On Page 7 of his Motion, Plaintiff submits a bullet-point list of topics of testimony that he seeks to preclude.  However, to the extent GSU would seek testimony concerning, for example, "a purported link between command hallucinations and violence," such evidence is not submitted to the jury for the truth of the matter asserted.  In other words, it would not be submitted to assist the jury in determining whether or not, in fact, such a link exists.  It would only be submitted to prove the good faith of GSU in making its decisions by showing that such decisions were based upon medical research.  Whether that research is valid or correct, or whether it was based upon sound science, is irrelevant to the inquiry in this lawsuit.  The relevant inquiry is whether GSU, and Dr. Stout in particular, acted in good faith and made an individualized assessment based upon reasonable judgment.  In that respect, GSU would not offer the types of "opinion" testimony listed by Plaintiff in order to persuade the jury of their truth, but only to show that there was a reasonable, good-faith basis supporting the decisions of Dr. Stout.  Such evidence is not expert testimony.  *Gomez*, 344 F.3d at 113.  It is merely the admissible testimony of witnesses who happen to have a certain amount of expertise.

## Conclusion

WHEREFORE, for the aforementioned reasons, Plaintiff's Motion *in Limine* should be denied.

Respectfully submitted this 2nd day of June, 2015.

|  |  |
|---|---|
| SAMUEL S. OLENS<br>Attorney General | 551540 |
| KATHLEEN M. PACIOUS<br>Deputy Attorney General | 558555 |
| DEVON ORLAND<br>Senior Assistant Attorney General | 554301 |
| */s/ Laura L. Lones*<br>LAURA L. LONES<br>Assistant Attorney General | 456778 |
| */s/ Ronald J. Stay*<br>RONALD J. STAY<br>Assistant Attorney General | 621732 |

PLEASE SERVE:
Laura L. Lones, and
Ronald J. Stay
Department of Law
40 Capitol Square, S.W.
Atlanta, GA  30334
Tel: (404) 463-8850
Fax: (404) 651-5304
llones@law.ga.gov
rstay@law.ga.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in 14-point New Times Roman type face.

*/s/ Laura L. Lones*
LAURA L. LONES          456778
Assistant Attorney General

## CERTIFICATE OF SERVICE

I do hereby certify that I hereby certify that on June 2, 2015, I electronically filed the foregoing **DEFENDANT'S RESPONSE IN OPPOSITION TO PLATINIFF'S MOTION IN LIMINE** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

James Radford
Caleb Gross
Radford & Keebaugh, LLC
315 West Ponce de Leon Avenue
Suite 1080
Decatur, Georgia  30030

Jeffrey R. Filipovits
Filipovits Law Firm, PC
2900 Chamblee-Tucker Road
Building 1
Atlanta, Georgia  30341

/s/ Laura L. Lones
LAURA L. LONES              456778
Assistant Attorney General