IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| R.W. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | 1:13-cv-02115-LMM |
| | ) | |
| Board of Regents of the University System of Georgia | ) ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES OF LITIGATION WITH BRIEF IN SUPPORT

COMES NOW Plaintiff R.W. ("Plaintiff" or "R.W.") and files this *Motion for Award of Attorneys' Fees and Expenses of Litigation With Brief in Support* ("Motion"), as follows:

### I.   MOTION

Plaintiff hereby moves for an award of reasonable attorneys' fees and expenses of litigation as follows:

- Attorneys' fees totaling $376,191.25[1]

- Expenses totaling $27,364.80

---

[1] This includes fees accrued through the filing date of this Application. It will be supplemented to the extent additional attorney time is required to conclude the case should Defendant oppose the Application.

- A total award of $403,556.05

Plaintiff has attached to this Motion the Declarations of James Radford, which includes an itemized report of the attorneys' fees and costs for Radford & Keebaugh, LLC (Attachment 1), the Declaration of Regan Keebaugh (Attachment 2), the Declaration of Caleb Gross (Attachment 3), and the Declaration of Jeffrey Filopovitz, which includes an itemized report of his attorneys' fees, as well as a supporting declaration from Gerald Weber (Attachment 4). Plaintiffs also submit the Declarations of Michael Caplan (Attachment 5), Andrew Coffman (Attachment 6), and William Goren (Attachment 7), independent attorneys with knowledge of the current prevailing market rates for attorneys in this specialized area of the law, the reasonableness of the time devoted to the litigation of this matter, and the public interest advanced by the case at hand.

## II.   BRIEF IN SUPPORT

### A.   Plaintiff is entitled to compensation for attorneys' fees and costs

The Americans with Disabilities Act provides "In any action . . . commenced pursuant to this chapter, the court, . . . in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs . . ." 42 U.S.C.A. § 12205. Moreover, under the Rehabilitation Act, "[i]n any action or proceeding to enforce or charge a violation of a provision of this

subchapter, the court, in its discretion, may allow the prevailing party . . . a

reasonable attorney's fee as part of the costs." 29 U.S.C.A. § 794a(b).

In the absence of some unusual or special circumstances that would make

an award of attorneys' fees unjust, a prevailing plaintiff under the federal civil

rights statutes should ordinarily recover attorney's fees as a part of the costs

taxable against the defendant.  Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)

(emphasis added); *accord* Head v.  Medford, 62 F.3d 351, 355 (11th Cir.  1995);

Doss v. Long, 624 F.Supp. 1078 (N.D. Ga. 1985) (discretion to deny attorneys' fees

to a prevailing party is exceedingly narrow). "As Congress recognized, fee

shifting can be an 'important tool' for ensuring the enforcement of constitutional

guarantees." Dowdell v. City of Apopka, Florida, 698 F.2d 1181, 1190 (11th Cir.

1983).  "The tool is only effective when the award granted covers the expenses of

litigation and returns to the attorney a profit equivalent to that which he would

have earned in his normal practice." Id.  Therefore, Congress intended that

"counsel for prevailing parties should be paid, as is traditional with attorneys

compensated by a fee-paying client, for all time reasonably expended on a

matter." See Senate Report No. 94-1011 at 5 (1976), *reprinted in* 1976 U.S.C.C. &

A.N. 5908, 5913.

### B.    Plaintiff is a "prevailing party"

A prevailing party is one who "succeed[s] on any significant issue in

litigation which achieves some of the benefit the parties sought in bringing suit."
Hensley, 461 U.S. at 433 (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)). Obtaining significant injunctive relief in a civil rights action, even without damages, entitles a plaintiff to "prevailing party" status. See Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402 (1968) (party who obtains injunction, but no damages, to prevent racial discrimination is a prevailing party entitled to attorneys' fees); Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 793, 109 S. Ct. 1486, 1494, 103 L. Ed. 2d 866 (1989) (party who brought many claims, but succeeded on only one, which required change in policy by school district, was a "prevailing party" entitled to attorney's fees); Lefemine v. Wideman, 133 S. Ct. 9, 11, 184 L. Ed. 2d 313 (2012) ("A plaintiff 'prevails,' we have held, when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. And we have repeatedly held that an injunction or declaratory judgment, like a damages award, will usually satisfy that test.") (internal quotations and citation omitted); Access for the Disabled, Inc. v. Wareagleraider, LLC, No. 11-62233-CIV, 2012 WL 1831542, at *1 (S.D. Fla. May 18, 2012) (deeming plaintiff a prevailing party in ADA accessibility suit and awarding loadstar fee when relief sought was solely injunctive in nature).

-4-

In this case, Plaintiff prevailed on two separate issues: (1) he obtained a finding by the jury that GSU had discriminated against him, on the basis of his disability, by placing ongoing conditions on his access to campus services, and obtained an injunction removing said conditions; and (2) he obtained $75,000 in damages for emotional distress based on the jury's determination that GSU had exercised "deliberate indifference" in taking the unlawful actions. Either victory, standing alone, would have achieved great benefit to Plaintiff and would have materially altered the relationship between the parties; here, Plaintiff achieved both. Therefore, he is undoubtedly a prevailing party.

Plaintiff anticipates that Defendant may argue that he is not a full "prevailing party" because the jury did not find in his favor as to "Issue One" on the jury form, which related to the initial decision to subject him to a "mandated risk assessment." However, the law would not support this argument. In the case of <u>City of Riverside v. Rivera</u>, 477 U.S. 561, 575, 106 S. Ct. 2686, 2695, 91 L. Ed. 2d 466 (1986), the Supreme Court rejected the notion that fees should be reduced on a "proportionate" basis to the result obtained versus the relief sought. In that case, the fee awarded by the district court was seven (7) times the amount of the verdict, which was significantly less than what the plaintiff requested at trial. Also, the plaintiff did not prevail on all claims presented to the jury. Yet, the Supreme Court upheld the fee award, holding:

Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief. Rather, Congress made clear that it "intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases, and not be reduced because the rights involved may be nonpecuniary in nature. Counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.

[. . .]

A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting § 1988. Congress recognized that private-sector fee arrangements were inadequate to ensure sufficiently vigorous enforcement of civil rights. In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case.

Rivera, 477 U.S. at 575 (internal quotations and citations omitted).

Moreover, the Supreme Court has rejected a "central issue" test, in which a fee would be reduced if the relief obtained was not the "primary" relief sought. Texas State Teachers Ass'n, 489 U.S. at 790. In Texas State Teachers Ass'n, the Court held that the key question was not which of several theories the plaintiffs ultimately prevailed on, but was whether "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the

suit." Id. at 789. Moreover, the court held, "where the plaintiff's claims arise out of a common core of facts, and involve related legal theories . . . the most critical factor is the degree of success obtained." Id.

Though the courts have permitted a reduction in fees where the Plaintiff only achieved a "technical" victory, or only obtained nominal damages (See Farrar v. Hobby, 506 U.S. 103, 114 (1992)), this is not such a case. Here, the Plaintiff achieved 100% of the injunctive relief sought, and also attained significant damages for his claim of ongoing discrimination. Therefore, he is undoubtedly a prevailing party.

**C.    The Lodestar Fee**

In Hensley, 461 U.S. at 433-37, the Supreme Court announced the now well-settled lodestar fee framework for calculating a reasonable attorney's fee award: "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Id. at 433. See City of Burlington v. Daque, 505 U.S. 557, 561 (1992). This method "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." Id.; accord, ACLU of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999); Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). This calculation is commonly referred to as the "lodestar." Norman, 836 F.2d at 1302;

see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 566 (1986); Webster Greenthumb Co. v. Fulton County, Ga., 112 F. Supp. 2d 1339, 1349 (N.D. Ga. 2000). The Eleventh Circuit utilizes the lodestar approach to determine a reasonable attorney's fee. Loos v. Club Paris, LLC, 731 F.Supp.2d 1324, 1329 (M.D.Fla. 2010); Camden I Condominium Ass'n., Inc. v. Dunkle, 946 F.2d 768, 772 (11th Cir. 1991).

Reasonable hours include the time incurred in litigating a plaintiff's claim of attorneys' fees – referred to as "fees on fees."  Norelus v. Denny's Inc., 628 F.3d 1270, 1301 (11th Cir. 2010); Jackson v. State Board, 332 F.3d 790, 798-99 (11th Cir. 2003); Jonas v. Stack, 758 F.2d 567, 568-69 (11th Cir. 1985).

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Barnes, 168 F.3d at 427 (quoting Norman, 836 F.3d at 1303).  To carry that burden, the fee applicant must provide:

> specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity …

Id.  See also Webster Greenthumb Co., 112 F. Supp. 2d at 1349.

The twelve factors relevant to calculation of a fully compensatory attorney

fee are set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). These factors have been approved by the Supreme Court as the correct guide to calculation of the lodestar attorney fee.  The twelve factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Delaware Valley, 478 U.S. at 562 (quoting Johnson, 488 F.2d at 717-19).

Today courts have generally concluded that several of the Johnson factors "are subsumed within the initial calculation of the lodestar." Delaware Valley, 478 U.S. at 565 (quoting Blum, 465 U.S. at 898-900). For example, courts now consider the factors involving "novelty [and] complexity of the issues" and "the special skill and experience of counsel" to be ". . . fully reflected" in the lodestar amount via the hourly rate charged and the numbers of hours worked.  Id.  The most critical factor present in the lodestar calculation is the degree of success obtained in the litigation. Villano v. City of Boynton Beach, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting Hensley, 461 U.S. at 436); see also Duckworth v. Whisenant, 97 F.3d 1393, 1399 (11th Cir. 1996) ("After determining the lodestar,

the court may adjust the amount depending upon a number of factors, including the quality of the results and representation of the litigation").

In this case, the Plaintiff, an individual with a chronic mental illness and little financial resources was completely successful in a hard-fought case against a powerful, influential entity that governs all public universities in the state of Georgia and which has access to vastly more resources than the Plaintiff. Plaintiff counsel was required to research, understand, and litigate the complex issue of sovereign immunity. Both the summary judgment litigation and the trial involved challenging issues of proof that plaintiff was ultimately able to carry. Plaintiff has presented evidence, in the Declarations of Michael Caplan, a highly reputable and experienced litigator, that the issues litigated and prevailed on by the Plaintiff are particularly complex and difficult. (Caplan Dec. at ¶¶ 11-14). Moreover, as stated in the Declaration of William Goren, an expert on ADA law and himself a disabled person, the result obtained in this case is extraordinary given the complexity of the ADA, the inherent difficulty representing a person with mental illness, the prejudice faced by disabled people, and the high standard of proof required for "deliberate indifference." (Goren Dec. at ¶¶ 10-11). Thus, no downward adjustment of the lodestar fee is warranted based on the "degree of success" or "difficulty of the representation" factors.  Because Plaintiff does not seek an upward adjustment, the correct fee in this case is the lodestar

-10-

fee.

**D.      The Prevailing Market Standard for the Proper Hourly Rate**

The first step in calculating the lodestar fee is to establish reasonable

hourly rates for Plaintiffs' counsel and paralegals. The definition of "reasonable"

in the calculation process is straightforward: "A reasonable hourly rate is the

prevailing market rate in the relevant legal community for similar services by

lawyers of reasonably comparable skills, experience, and reputation." Norman,

836 F.2d at 1299 (quoting Blum, 465 U.S. at 895-96 n.11).  Appropriate hourly

rates are those hourly rates charged by counsel in the market where the case was

litigated in similar litigation. "[T]his circuit has recognized that a movant may

meet his burden by producing either direct evidence of rates charged under

similar circumstances or opinion evidence of reasonable rates." Duckworth, 97

F.3d at 1396; See also Norman, 836 F.2d at 1299 (satisfactory evidence includes

opinion evidence that the rates are reasonable); Shealy v. City of Albany, Ga., 137

F. Supp. 2d 1359, 1376 (M.D. Ga. 2001) (finding that affidavits from local

attorneys with experience in civil rights litigation testifying as to the

reasonableness of the plaintiff's attorney's rates was sufficient evidence to

support the requested rates).

Plaintiff has introduced satisfactory evidence of the reasonableness of his

attorneys' hourly rates via the declarations of well-respected independent

attorneys. Michael Caplan is a highly reputable litigator in the metro Atlanta area with equal experience to Plaintiff's primary attorneys, James Radford and Regan Keebaugh. (Caplan Dec. at ¶¶ 2-7). Mr. Caplan has testified, based both on the actual hourly rate he commands, and based on his knowledge of the metro Atlanta market for litigators, that an hourly rate of $385 is within the fair market range for James Radford and Regan Keebaugh, and an hourly rate of $275 is within the fair market range for Caleb Gross. (Id. at ¶¶ 7-8). Plaintiff has also provided the Declaration of Gerald Weber, a well-recognized and reputable civil rights litigator, who attests to the reasonableness of the hourly rate of $350 for Jeff Filipovits. (Attachment 4, Exhibit B (Weber Dec.) at ¶ 6).

Moreover, the Supreme Court has approved the use of current rather than historic rates to fully compensate prevailing counsel where there has been a delay in payment due to the length of litigation and the contingent nature of the fee agreement. Missouri v. Jenkins by Agyei, 491 U.S. 274, 284 (1989) ("We agree . . . that an appropriate adjustment for delay in payment - whether by the application of current rather than historic hourly rates or otherwise - is within the contemplation of the statute."); Norman, 836 F.2d at 1302 ("In this circuit, where there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates").

-12-

In this particular case, Plaintiff's counsel made numerous attempts to enter into settlement negotiations with defense counsel, yet no offer was made to settle until after an enormous amount of time had been expended litigating summary judgment, and even then, the "best and final" amount offered to settle was far below what Plaintiff ultimately obtained at trial and was a tiny fraction of Plaintiff's attorneys fees and costs to date. (Radford Dec. at ¶ 9). Plaintiff was basically forced to litigate this case through to trial in order to obtain a fair result. This protracted the litigation significantly. Therefore, using current billing rates is appropriate.

### E.   Reasonable hours devoted to the case

The Court next considers whether the number of hours counsel devoted to this case was reasonable. "[A]ll reasonable expenses and hours incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs …." <u>Barnes</u>, 168 F.3d at 427.  (quoting <u>Dowdell v. City of Apopka</u>, 698 F.2d 1181, 1192 (11th Cir. 1983)). Compensable activities include pre-litigation services in preparation of filing the lawsuit, background research, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail, monitoring and enforcing favorable orders, and preparing and litigating the request for attorneys' fees. <u>See</u> <u>City of Riverside v. Rivera</u>, 477 U.S. 561, 573 n.6 (1986)

(allowing compensation for attorney discussions and strategy conferences); <u>Cruz v. Hauck</u>, 762 F.2d 1230, 1233-34 (5th Cir. 1985) (allowing compensation for preparing and litigating fee request); <u>Adams v. Mathis</u>, 752 F.2d 553, 554 (11th Cir. 1985) (measures to enforce order are compensable); <u>New York State Assoc. for Retarded Children v. Carey</u>, 711 F.2d 1136, 1146 & n.5 (2d Cir. 1983) (allowing compensation for background research); <u>In re Agent Orange Prod. Liab. Litig.</u>, 611 F. Supp. 1296, 1321, 1348 (E.D.N.Y. 1985) (compensating routine activities such as telephone calls and reading mail that contribute to the litigation).

However, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary." <u>Hensley</u>, 461 U.S. at 434. "[T]he standard of reasonableness," in these cases, "is to be given a liberal interpretation." <u>Dowdell</u>, 698 F.2d at 1192; *accord* <u>NAACP v. City of Evergreen</u>, 812 F.2d 1332, 1337 (11th Cir. 1987). Work performed by multiple attorneys, however, is not subject to reduction where the attorneys were not unreasonably doing the same work. <u>Jones v. Central Soya Co.</u>, 748 F.2d 586, 594 (11th Cir. 1984); <u>Johnson v. University College</u>, 706 F.2d 1205, 1208 (11th Cir. 1983).

Under this reasonableness test, fees are compensable so long as such fees would be acceptable to a client paying on an hourly basis. To aid the Court in determining whether appropriate billing judgment has been exercised, the fee

applicant must "establish[] entitlement [to fees] and [to] document[] the appropriate hours and hourly rates." Norman, 836 F.2d at 1303. The applicant must "maintain[] records to show the time spent on the different claims, and set[] out with sufficient particularity the general subject matter of the time expenditures so that the district court can assess the time claimed for each activity. Laube v. Allen, 506 F. Supp. 2d 969, 976 (M.D. Ala. 2007) (citing Barnes, 168 F.3d at 427). A party opposing a fee application has an obligation to be "specific and 'reasonably precise'" in their objections and proof. Id. (quoting Hensley, 461 U.S. at 437); see also Lambert v. Fulton County, Ga., 151 F. Supp. 2d 1364, 1369 (N.D. Ga. 2000) (objections and proof concerning hours to be excluded must be reasonably precise).

Plaintiff's counsel has maintained contemporaneous billing records for time devoted to the case.  (Radford Dec., Exhibit A). Counsel has reviewed the bill carefully to ensure accuracy and to remove any extraneous or duplicative entries. (Id. at ¶¶ 10-13). The result is a detailed billing record showing all counsels' time and activities since the inception of the case.  Moreover, Plaintiff has presented evidence in the form of the declarations of Michael Caplan, William Goren, Andrew Coffman, and Gerald Weber, as to the reasonableness of the time expended on the matter. (Attachments 4, Exhibit B (Weber Dec.) at ¶ 7), Caplan Dec. at ¶¶ 9-19; Coffman Dec. at pages 4-6 ; Goren Dec. at ¶¶ 13-14).

Plaintiff predicts that Defendant may argue that certain time entries should be stricken because they relate to motions that were ultimately denied, including Plaintiff's own motion for summary judgment. However, the law would not support such a reduction. A prevailing party is to be compensated for all time reasonably spent on the underlying litigation, and not only for issues that are ultimately successful. Rivera, 477 U.S. at 575. Moreover, it is not market practice that an attorney is only compensated for work on issues that are ultimately successful. Support for this proposition is contained in the declaration of Michael Caplan. (Caplan Dec. at ¶¶ 15-18). Attorneys often are required to explore multiple strategic avenues in advancing a client's interest; so long as the attorney acts reasonably in pursuing those avenues, he or she is entitled to be compensated for his or her time. As a simple example, if a company retained a defense firm to litigate a matter on an hourly basis, and the firm filed a summary judgment motion that the court denied, the company would not be entitled to refuse payment for the work behind that motion, so long as the motion was reasonably calculated to serve the client's strategic interest. To treat a prevailing plaintiff differently would be to discriminate against civil rights plaintiffs in favor of private interests, whereas the law contemplates that a prevailing civil rights plaintiff recover fees just as if he or she was a client in the private marketplace. See Senate Report No. 94-1011 at 5 (1976), *reprinted in* 1976 U.S.C.C.

-16-

& A.N. 5908, 5913.

Plaintiff also contemplates that Defendant may argue that the fee should be reduced because the jury found no liability as to one of the two issues presented to it. However, this is also not consistent with the law, which deems a plaintiff who obtains any significant relief to be a "prevailing party" entitled to recover the full lodestar fee. This is discussed in detail in section II(B) of this brief, *supra*. Moreover, the work done to obtain a finding of liability on the second issue presented to the jury—whether the ongoing conditions placed on Plaintiff were in violation of the ADA—was inextricably intertwined with the work that was relevant to the first issue—whether the initial decision to require Plaintiff to undergo an assessment was in violation of the ADA. The legal questions were identical; namely, they both were brought under Title II of the ADA and Section 504 of the Rehabilitation Act; they both involved the "direct threat" standard under the ADA; they both involved the question of whether the actions taken were "because of" disability, as opposed to some non-disability related factor; the standard for damages on both claims was "deliberate indifference"; and both claims were subject to the same sovereign immunity arguments. The exact same witnesses had to be deposed as to both claims, as it was a single cast of characters involved in both decisions. Both decisions were made in large part based on a single factual occurrence—that is, Plaintiff's exit

from a clinical interview on February 14, 2013. Therefore, the two claims are inextricably intertwined, and the work cannot be separated and delineated as being in pursuit of one claim or the other.

Plaintiff's position is consistent with the law. The Eleventh Circuit held in Villano v. City of Boynton Beach, 254 F.3d 1302, 1308 (11th Cir. 2001) that a district court erred by reducing the amount of attorneys fees because the monetary result obtained ($40,000) was significantly less than what was sought ($174,741), noting that the district court failed to take into account the public interest served by the litigation. The rationale behind not reducing the fee based on proportionality was summed up nicely by a recent decision of the Seventh Circuit, which affirmed a $325,000 fee award on an FMLA interference claim where the plaintiff recovered less than $50,000. Cuff v. Trans States Holdings, Inc., 768 F.3d 605, 610-11 (7th Cir. 2014). The court held:

> Fee-shifting statutes . . . are designed to prevent the potentially high costs of litigation from stifling justified claims. Without such a statute, defendants might have said to Cuff at the outset: "We concede violating your rights under the Act, and we also concede that your loss is $50,000, but we plan to wage an all-out defense that will cost at least $200,000 to overcome. You might as well capitulate, because you will lose on net." A business that can establish a reputation for intransigence may end up not paying damages *and* not having to defend all that often either, because if a prevailing party who litigates to victory gets only a small award of fees the next would-be victim will see that litigation is futile and the employer won't have to repeat the costly defense. . .

-18-

> [H]yperaggressive defendants who drive up the expense of litigation
> must pay the full costs, even if legal fees seem excessive in
> retrospect. That principle controls here--or, more properly, the
> district judge did not abuse his discretion in thinking that it controls
> and deeming Cuff's legal expenses reasonable in light of the
> defendants' conduct.

Id.

The 7th Circuit's logic in Cuff holds true here because Plaintiff made

numerous attempts to settle the matter for far less than what he seeks now. See

Radford Dec. at ¶ 9). For all of these reasons, Plaintiff should recover his full fee.

### F.   Other *Johnson* Factors Relevant to the Loadstar

The eighth Johnson factor asks whether counsel obtained an excellent

result for his client. "[S]uccess in a civil rights claim is measured differently than

success in a private tort claim . . . 'Congress has elected to encourage meritorious

civil rights claims because of the benefits of such litigation for the named plaintiff

and for society at large, irrespective of whether the action seeks monetary

damages.'" Villano, 254 F.3d at 1305 (quoting Blanchard v. Bergeron, 489 U.S. 87,

96 (1989)). "Where the plaintiff's relief engenders specific spillover benefits for

non-parties, the public benefit may assume a principal significance in the court's

calculus."  Atlanta Journal and Constitution v. City of Atlanta Dept. of Aviation,

347 F.Supp.2d 1310, 1320 (N.D.Ga. 2004).

There is no question as to the level of success achieved in this case.

-19-

Plaintiff's victory was complete, and sent an important signal that discrimination against people with mental illnesses will not be tolerated. Plaintiff also presents specific evidence of the benefit to disabled people in general of this victory in the form of the declaration of William Goren, a disabled attorney who is an expert in disability law. As Mr. Goren states, this victory is likely to resonate within the relatively small community of attorneys who work in the area of disability law, and will have a material impact on the advice they give to their clients; as a result, colleges and universities, as well as any entity that is covered by the ADA and Rehabilitation Acts, is likely to design preventative measures to help prevent discrimination against people with mental illnesses. (Goren Dec. at ¶¶ 10-12). The victory also shows that plaintiffs can realistically receive damages by showing "deliberate indifference" in a disability discrimination case, and therefore will serve as a deterrent to discrimination against any disability. (Id. at ¶ 11).

Therefore, the enormous benefit to the disabled community weighs in favor of a full award of attorneys' fees in this case.

### G.   Plaintiff's Expenses

Plaintiff's counsel advanced all of the expenses to insure a successful outcome of this litigation.  They should be reimbursed for those necessary expenses, by way of a Bill of Costs and Application.  Plaintiffs seek the

reimbursement of those expenses included in Exhibit A to the Radford

Declaration (Attachment 1).

Federal Rule of Civil Procedure 54 provides that costs should be awarded

to the prevailing party. Rule 54 provides in pertinent part:

> (d) Costs. Except when express provision therefor is made either in a
> statute of the United States or in these rules, costs shall be allowed as
> of course to the prevailing party unless the court otherwise directs;
> but costs against the United States, its officers, and agencies shall be
> imposed only to the extent permitted by law.

Fed. R. Civ. P. 54(d).

Expenses for telephone charges, mileage, travel, photocopying, and

postage have been found to be reasonable expenses under § 1988. See Cappeletti

Bros., Inc. v. Broward County, 754 F.Supp. 197, 198 (S.D. Fla. 1991) ("[A]ward of

attorney's fees in a civil rights case should include reasonable out of pocket

expenditures of the attorney beyond normal overhead . . . These nonstatutory

costs subsumed within the reasonable attorney's fee could include compensation

for postage, long distance calls, photocopying, travel, paralegals, expert

witnesses, and computerized legal research.") (internal citation omitted).

Counsel's office utilizes a number of practices to ensure that costs were

carefully managed. The above expenses are accurate, are itemized on the billing

statement attached to Mr. Radford's Declaration and represent all necessary

expenses to the prosecution of the case.

-21-

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the instant

Motion be granted and that the Court award Plaintiff reasonable attorneys' fees

and expenses of litigation as follows:

- Attorneys' fees totaling $376,191.25

- Expenses totaling $27,364.80

- A total award of $403,556.05

*/s/ James E. Radford, Jr.*
James E. Radford, Jr.
Georgia Bar No. 108007
*Counsel for Plaintiff*

Radford & Keebaugh, LLC
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
james@decaturlegal.com
(678) 271-0300

## CERTIFICATE OF SERVICE

I hereby certify that on this day, November 13, 2015, I filed the foregoing

pleading with the Court's ECF system.

By: */s/ James E. Radford, Jr.*
   James E. Radford, Jr.
   Georgia Bar No. 108007
   *Counsel for Plaintiff*


Radford & Keebaugh, LLC
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
james@decaturlegal.com
(678) 271-0300