IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

R.W.,

       Plaintiff,

v.

BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA,

       Defendant.

CIVIL ACTION NO.
1:13-CV-2115-LMM

## **ORDER**

This matter comes before the Court on Plaintiff's Motion for Award of

Attorneys' Fees and Expenses of Litigation [111] and Plaintiff's Amended Motion

for Award of Attorneys' Fees and Expenses of Litigation [116].[1] After a review of

the record and due consideration, the Court enters the following Order.

Plaintiff, a student at Georgia State University ("GSU"), filed the instant

action on June 24, 2013, seeking  damages and injunctive relief for disability

discrimination in violation of Title II of the Americans with Disabilities Act

("ADA"), 42 U.S.C. §§ 12131-12165, and § 504 of the Rehabilitation Act ("RA"), 29

U.S.C. §§ 701-796. Specifically, Plaintiff claimed that GSU discriminated against

him on the basis of his schizophrenia diagnosis when it (1) required him to

---

[1] Plaintiff's Amended Motion requests an additional $7,045.50 in attorneys' fees, which accounts for billing hours spent since the original Motion [111]. Defendant does not oppose this request or dispute the amount.

release his medical records and attempted to remove him from student housing as part of a mandated risk assessment, and (2) placed continuing restrictions upon his housing and enrollment after completion of the mandated risk assessment.

After a four-day trial, the jury found in Plaintiff's favor with regard to the continuing restrictions Defendant placed upon him following the mandated risk assessment process, but not with regard to Defendant's actions as part of the mandated risk assessment itself. Dkt. No. [107]. The jury awarded Plaintiff $75,000 in compensatory damages. Id. at 4-5. Accordingly, the Clerk entered judgment in favor of Plaintiff in that amount, plus attorney fees, costs, and interest. Dkt. No. [109].

Plaintiff filed the instant motions, seeking $383,236.75 in attorneys' fees and $27,364.80 in expenses. Dkt. No. [116] at 2. Defendant responded, disputing the reasonableness of the amounts requested. Dkt. No. [113].

With regard to attorneys' fees, Defendant first contends the hourly rates charged by Plaintiff's attorneys are excessive in the Atlanta legal market. Id. at 4-6. Defendant also objects that the hours billed are excessive and unnecessary with regard to: (1) all time spent on Plaintiff's unsuccessful motions; (2) the time spent by three attorneys meeting with and preparing an expert report for Yared Alemu, who was ultimately not identified as an expert; (3) the 8.6 hours Plaintiff's counsel, Mr. Gross, spent researching Plaintiff's regulatory claims, which were abandoned at summary judgment; (4) the 6.4 hours spent researching the legal

2

requirements for expert witnesses; and (5) the .4 hours Mr. Gross spent reviewing Judge Jones's 5-page standing order. Id. at 6-8. Defendant further argues that Plaintiff's attorneys' fees should be adjusted based on the limited success obtained. Id. at 8-9.

In addition to objecting to Plaintiff's attorneys' fees, Defendant also objects to the recovery of Plaintiff's expert witness fees beyond the statutory per diem permitted for testifying at trial. Id. at 10.

Plaintiff replied to Defendant's objections, defending both his attorneys' billing rates and the total number of hours billed, and emphasizing Defendant's refusal to settle as a primary reason for the prolonged litigation. Dkt. No. [115].

When assessing an award of attorneys' fees, a district court must first calculate what the Supreme Court has labeled the "lodestar" amount. See Hensley v. Eckerhart, 461 U.S. 424 (1983). The method for determining this amount is clearly established:

> In calculating a reasonable award of attorneys' fees, a district court must first calculate the "lodestar" amount—the number of hours reasonably expended multiplied by a reasonable hourly rate. A reasonable hourly rate is the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." The district court is "itself an expert" on the reasonableness of hourly rates and "may consider its own knowledge and experience" on the topic. Further, the fee applicant must provide the district court with detailed evidence about the reasonable hourly rate, as well as records to show the time spent on the different claims and the general subject matter of the time expenditures set out with particularity. In addition, a "well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case."

Dial HD, Inc. v. ClearOne Commc'ns, 536 F. App'x 927, 930-31 (11th Cir. 2013) (citations omitted) (first quoting ACLU v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999), then quoting Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994)).

## I.   Hourly Rate

Plaintiff argues that the hourly rates of $385 charged by Plaintiff's attorneys James Radford and Regan Keebaugh, $275 charged by Caleb Gross, and $350 charged by Jeff Filipovitz are reasonable. Dkt. No. [111] at 11-12. In support, Plaintiff includes affidavits from each attorney, as well as declarations from 3 independent litigation attorneys in the metro Atlanta area attesting to the reasonableness of Plaintiff's attorneys' rates. Id.

A reasonable hourly rate is "the 'prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.' Establishing a claimed market rate is the plaintiff's burden." Dillard v. City of Greensboro, 213 F.3d 1347, 1354 (11th Cir. 2000) (citation omitted) (quoting Barnes, 168 F.3d at 427 (11th Cir. 1999)). Defendant contends that Plaintiff has failed to establish such a market rate because the submitted affidavits do not provide direct evidence of actual rates that have been paid in the past. Dkt. No. [113] at 4-5.

Direct evidence, however, is not the only means by which a plaintiff can successfully carry this burden. A movant can establish a reasonable rate "by producing either direct evidence of rates charged under similar circumstances *or*

4

*opinion evidence* of reasonable rates." <u>Duckworth v. Whisenant</u>, 97 F.3d 1393,
1396 (11th Cir. 1996) (citing <u>Norman v. Hous. Auth. of Montgomery</u>, 836 F.2d
1292, 1299 (11th Cir. 1988)). Furthermore, although what a plaintiff's attorney
actually charges his clients "is powerful, and perhaps the best, evidence of his
market rate," <u>Dillard</u>, 213 F.3d at 1354, the Eleventh Circuit also recognizes that
in areas of legal practice where an attorney typically represents the
underprivileged, it is often "virtually impossible to establish a prevailing market
rate for such services." <u>Norman</u>, 836 F.2d at 1300. It is therefore permissible in
these situations for the plaintiff to provide evidence of reasonable market rates in
analogous practice areas. See <u>Duckworth</u>, 97 F.3d at 1396 (stating that civil rights
cases may require such analogies).

Plaintiff produces the testimony of Michael Caplan, an experienced
litigator in the metro Atlanta area, who attests that the rates attributed to James
Radford ($385), Regan Keebaugh ($385), and Caleb Gross ($275) are reasonable.
Dkt. No. [111] at 12 (citing Dkt. No. [111-5] ¶¶ 2-8). Caplan testifies that he bases
these assertions on the actual rate that he charges his clients and on his
knowledge of the fair market range for litigators of similar experience in the
Atlanta area. <u>Id.</u> Plaintiff also produces the testimony of Gerald Weber, a well-
recognized civil rights litigator, who attests that the rate attributed to Jeff
Filipovitz ($350) is reasonable. <u>Id.</u> This evidence, which analogizes to the actual
rates of similarly experienced litigators in the relevant legal community, is a valid
means of establishing reasonable hourly rates for a case such as this one. The

Court therefore finds that Plaintiff has met his burden of establishing a reasonable market rate for the services of his counsel.

## II.   Hours Expended

Regarding the reasonableness of the hours expended by Plaintiff's counsel, Defendant first argues that the Court should strike any hours directed toward efforts that were "wholly unsuccessful and completely unnecessary." Dkt. No. [113] at 6. On this basis, Defendant contends that it should not be required to pay for those hours spent on three unsuccessful motions: (1) Plaintiff's motion for summary judgment, (2) Plaintiff's challenge to Dr. Lee Barber's declaration, and (3) Plaintiff's motion in limine.

Plaintiff argues, and the Court agrees, that Defendant's argument is unavailing because the Supreme Court has established that in civil rights cases prevailing parties should be paid for all efforts reasonably expended toward the litigation, not just for successful efforts. City of Riverside v. Rivera, 477 U.S. 561, 575 (1986). Defendant does not contend that the above motions were unreasonably made, but instead asserts that these efforts should go uncompensated solely because they were unsuccessful. By itself, however, lack of ultimate success does not provide sufficient grounds for deducting these hours, and the Court therefore declines to do so.

Defendant also argues that certain hours spent by Plaintiff's counsel were excessive or unnecessary. Dkt. No. [113] at 7-8. Fee applicants are required to utilize proper "billing judgment," and "excessive, redundant or otherwise

6

unnecessary hours should be excluded" from the Court's calculus. Norman, 836 F.2d at 1301 (quoting Hensley, 461 U.S. at 434, 437). The determination of which hours should be excluded as excessive is left to the discretion of the district court. Id.

Specifically, Defendant claims that Plaintiff's counsel spent excessive or unnecessary hours on the following: (1) meetings with Yared Alemu and the preparation of his expert report, despite the fact that Alemu was never identified as an expert; (2) research regarding regulatory claims that Plaintiff later abandoned; (3) research regarding the legal requirements for expert witnesses; and (4) review of Judge Jones's 5-page standing order.

Defendant is particularly concerned with the length of time that Plaintiff's counsel spent meeting with Mr. Alemu and preparing his expert report, which amounted to 1.7 hours for Mr. Filopovits, 6.5 hours for Mr. Radford, and 12.6 hours for Mr. Gross. Defendant states, and Plaintiff does not dispute in his reply, that Mr. Alemu was a disgruntled former employee who was not qualified as an expert and "nothing more than an open records request to Defendant would have disclosed that Mr. Alemu was not an expert . . . ." Dkt. No. [113] at 8. Although it is unclear why exactly Plaintiff decided not to name Mr. Alemu as an expert, it is likely that Plaintiff's counsel was already aware that Mr. Alemu left GSU under circumstances leading to his public litigation. Despite the fact that more than an open records report was likely needed for Plaintiff's counsel to reach a decision as to the utility of naming Mr. Alemu, the Court does find the amount of time billed

for this to be excessive – especially since it is not rebutted by Plaintiff's counsel. Defendant does not put forth its own estimate of what a reasonable length of time would have been. The Court therefore finds it appropriate to reduce the amount of time by half to a total of 6.3 hours for Mr. Gross, .85 hours for Mr. Filopovitz, and 3.25 hours for Mr. Radford.

Regarding Plaintiff's regulatory claims, Defendant has not alleged that these claims were frivolous, but instead appears to argue that the 8.6 hours spent researching them were inherently excessive because they were ultimately dropped. Id. The Court disagrees with that assessment, which would seem to discourage attorneys from diligently investigating alternative avenues of relief for their clients. The Court also notes that Plaintiff's timely abandonment of these claims has likely spared both parties a considerable amount of time and effort that would have been necessary to fully litigate these claims, regardless of their merit.

The Court also declines to deduct the 6.4 hours spent researching the legal requirements for expert witnesses. Cases such as this one, involving a complex mental health diagnosis and the testimony of several medical professionals, seem especially likely to encompass complicated and nuanced issues regarding expert witnesses. Plaintiff's motion in limine, which dealt with the proper evidentiary classification of Defendant's witnesses, is illustrative. Dkt. No. [75]. The Court therefore finds that 6.4 hours was not an excessive amount of time to review

these requirements, especially when such research was likely undertaken to resolve actual disputes.

On similar grounds, the Court does not find that .4 hours (24 minutes) is a facially unreasonable amount of time to spend reviewing Judge Jones's standing order, considering that a thorough comprehension of that order was necessary for the proper litigation of this case.

As a related matter, Defendant notes that Plaintiff's billing includes an entry for the 1.4 hours that Mr. Radford spent conducting interviews with the media. Dkt No. [113] at 7 (citing Dkt. No. [111-1] at 27). Because this litigation was not independently followed by the press, such that media management would be a necessary part of handling the case, Defendant argues that it should not be required to pay for those hours. Dkt. No. [113] at 7. The Court agrees that these efforts were not truly in furtherance of Plaintiff's case, and therefore finds that 1.4 hours should be further deducted from Mr. Radford's time.

In summary, the Court agrees that Plaintiff's counsel engaged in a limited amount of excessive or unnecessary billing. It therefore deducts a total of .85 hours from Mr. Filopovitz, 6.3 hours from Mr. Gross, and 4.65 hours from Mr. Radford. Using the hourly rates attributed to them, which the Court finds to be reasonable, this results in a deduction of $297.50 from Mr. Filipovitz's billing entries,[2] $1,732.50 from Mr. Gross's billing entries,[3] and $ 1790.25 from Mr.

---

[2] .85 hours multiplied by Mr. Filipovitz's hourly rate of $350.

Radford's billing entries,[4] amounting to a total deduction of **$3,820.25**. The

properly calculated lodestar is therefore **$379,416.50**.

### III.   Degree of Success

Once the lodestar has been determined, a reduction may be necessary if the

relief achieved was "limited in comparison to the scope of the litigation as a

whole." Id. at 1302 (citing Hensley, 461 U.S. at 435, 440). Defendant argues that

Plaintiff only managed to achieve limited success, and therefore an award of the

full lodestar amount is not appropriate. Dkt. No. [113] at 9. In support of this

contention, Defendant points out that Plaintiff abandoned two regulatory claims

before trial and prevailed on only one of the two claims that went to trial. Id.

Plaintiff responds that he was nonetheless able to achieve both an award of

$75,000 in damages for his emotional distress and an injunction removing GSU's

discriminatory restrictions. Dkt. No. [111] at 5.

The Court, when analyzing Plaintiff's degree of success, must examine

more than just the ratio between successful claims and unsuccessful ones.

Popham v. City of Kennesaw, 820 F.2d 1570, 1579 (11th Cir. 1987). The

vindication of a constitutional right can, of itself, be a sufficiently significant

result even when the plaintiff receives only a small amount of money. Norman,

836 F.2d at 1302; accord Cuff v. Trans States Holdings, Inc., 768 F.3d 605, 610-11

---

[3] 6.3 hours multiplied by Mr. Gross's hourly rate of $275.

[4] 4.65 hours multiplied by Mr. Radford's hourly rate of $385. This includes 1.4 hours for interviews with the media and 3.25 hours for meetings with Mr. Alemu.

(7th Cir. 2014) (emphasizing that fee-shifting statutes exist to ensure that justified claims will not be stifled simply because the monetary award would be small). In the instant case, Plaintiff achieved his requested monetary recovery for his emotional distress damages and was able to vindicate his constitutional rights through injunctive relief. Plaintiff thus achieved substantial redress for the central grievances giving rise to this litigation. The Court therefore finds that, even if some of his claims were unsuccessful, Plaintiff's victory is nonetheless significant enough to warrant an award of the full lodestar.

Alternatively, Defendant argues that Plaintiff should not be paid for his unsuccessful claims because they were separate and distinct from the claim that prevailed. Dkt. No. [113] at 3. The Supreme Court has indeed held that plaintiffs cannot receive attorneys' fees for hours spent on unsuccessful claims that were based on "different facts and legal theories." Hensley, 461 U.S. at 434. Hours should not be deducted, however, if the plaintiff's claims for relief were based on a "common core of facts or . . . related legal theories" and the overall success of the litigation was significant. Id. at 435.

The Eleventh Circuit acknowledges that "plaintiff's counsel is required to 'explore every aspect of the case,' . . . [therefore] courts have expansively treated claims as being related." Popham, 820 F.2d at 1579 (quoting Jones v. Diamond, 636 F.2d 1364, 1382 (5th Cir. Jan. 1981) (en banc) overruled on other grounds by International Woodworkers v. Champion Int'l, 790 F.2d 1174 (5th Cir. 1986) (en banc)). In the instant case, all of Plaintiff's claims arose from the same sequence

11

of events and from the restrictions placed on Plaintiff by GSU. There is also substantial overlap between the legal theories raised by Plaintiff, primarily because both of the claims that went to trial were brought under the same sections of the ADA and the RA. Thus, having already determined that Plaintiff's degree of success merits an award of the full lodestar, the Court further finds that Plaintiff's claims were all based on a common core of facts and legal theories, which means that none of them should be excluded from the lodestar sum.

Thus, the Court ultimately finds that the properly calculated lodestar, utilizing a reasonable hourly rate and deducting excessive or unnecessary hours, is **$379,416.50**. The Court also finds that Plaintiff's degree of success was substantial, and there were no unrelated and unsuccessful claims that need to be excluded from the Court's calculations. The lodestar amount therefore does not need to be adjusted further.

## IV. Expert Witness Fees

In addition to contesting the recovery of attorneys' fees, Defendant claims that Plaintiff is not entitled to recover expert witness fees beyond the statutory *per diem*. Defendant correctly states that § 1988 does not provide for the recovery of expert fees in this case. See 42 U.S.C. § 1988(c). Plaintiff responds that the independent fee-shifting provisions of the ADA allow for the recovery of "litigation expenses," a phrase which he argues was meant to encompass expert witness fees. 42 U.S.C. § 12205.

In support of his position, Plaintiff cites the decisions of several district courts that have adopted such an interpretation of the ADA's provisions. See Blackwell v. Foley, 724 F. Supp. 2d 1068, 1085 (N.D. Cal. 2010); Jones v. Eagle-N. Hills Shopping Ctr., L.P., 478 F. Supp. 2d 1321, 1329 (E.D. Okla. 2007). Plaintiff also points out that the legislative history of the statute favors his interpretation. See H.R. Rep. No. 101-485, pt. 3, at 73 (1990), as reprinted in 1990 U.S.C.C.A.N. 445, 496 ("Litigation expenses include the costs of expert witnesses.").

Defendant, for its part, provides only a single case that has denied expert fees in the context of ADA litigation. See Wyatt *ex rel* Rawlins v. Sawyer, 67 F. Supp. 2d 1331, 1356 (M.D. Ala. 1999). That court, however, discussed only the fee-shifting provisions of § 1988(c) and did not acknowledge or interpret the independent fee-shifting provisions of the ADA. Id. In light of the considerable support for Plaintiff's interpretation, the Court finds that Plaintiff is permitted under the ADA to recover expert witness fees as part of his litigation expenses. Thus, Plaintiff is entitled to the full amount of **$27,364.80** that he requested in litigation expenses. Dkt. No. [116] at 2.

## V.   Conclusion

Plaintiff's Motion for Attorneys' Fees [111] is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's Amended Motion for Attorneys' Fees [116] is **GRANTED**. It is **ORDERED AND ADJUDGED** that Plaintiff R.W. is entitled to attorneys' fees in the amount of **$379,416.50** and litigation expenses in the

amount of **$27,364.80**, for a total award of **$406,781.30** from Defendant

Board of Regents of the University System of Georgia.

   **IT IS SO ORDERED** this 7ᵐ day of June, 2016.


                              _____
                              **Leigh Martin May**
                              **United States District Judge**